TRIPPS RESTAURANTS OF NORTH CAROLINA, INC., Plaintiff v. SHOWTIME ENTERPRISES, INC., DUELING PIANOS OF NORTH CAROLINA, INC., FRANK SCOZZAFAVE and MICHAEL SCOZZAFAVE, Defendants

No. COA03-610

(Filed 18 May 2004)

## 1. Guaranty— breach of lease contract—personal guarantor

The trial court did not err in a breach of lease contract case by finding defendant liable as the personal guarantor of the pertinent lease, because: (1) defendant's signature on the contract served no other function except to acknowledge his agreement to guarantee the lease; (2) the preamble of the lease further demonstrated that defendant company was the lessee and defendant individual was a guarantor; (3) the only reasonable interpretation of defendant's signature is that he was a guarantor on the lease; and (4) the contract established the parties' intention to create a separate guaranty contract contingent upon the default of the primary obligor.

**2. Landlord and Tenant— breach of lease contract—failure to mitigate damages**

> The trial court did not err in a breach of lease contract case by not finding that plaintiff failed to mitigate its damages, because: (1) plaintiffs presented evidence that defendants left the property in such poor condition that it would have cost several hundred thousand dollars just to restore it to a condition in which it could be rented; and (2) plaintiffs testified that it was not feasible for them to attempt these extensive repairs in the short time remaining on the lease.

Appeal by defendant from orders entered 16 August 2002 and 3 September 2002 by Judge Catherine C. Eagles in Guilford County. Superior Court. Heard in the Court of Appeals 25 February 2004.

*Adams & Osteen, by J. Patrick Adams and William L. Osteen, Jr., for plaintiff-appellee.*

*William M. Black, Jr., for defendants-appellants.*

LEVINSON, Judge.

Defendant (Frank Scozzafave) appeals from judgments finding him liable, as the personal guarantor of a lease, for breach of the lease contract. We affirm.

This appeal arises from the interpretation of a lease signed 12 November 1997. The first sentence of the lease states:

> This lease agreement, made and entered into this the 12th of November, 1997, by and between Tripps Restaurants of North Carolina, . . . hereinafter called the "Lessor," and Showtime Enterprises, . . . hereinafter called the "Lessee" and Frank Scozzafave . . . and Michael A. Scozzafave . . . hereinafter called the "Guarantors."

The text of the lease follows this introductory sentence, setting out the obligations of the lessor and lessee. At the conclusion of the lease are the signatures of the parties. Defendant signed on the line labeled "guarantor."

On 22 May 2001 plaintiff filed suit against defendants Showtime Enterprises, Inc., Dueling Pianos of North Carolina, Inc.,[1] Frank

---

1. The lease was assigned to Dueling Pianos of North Carolina, Inc., on 9 December 1997.

Scozzafave, and Michael Scozzafave. The complaint alleged that the defendants had defaulted on the terms of the lease by failing to pay rent, property taxes, or insurance, and that they were liable for payment of back rent, taxes, insurance, and attorney's fees. Plaintiff also alleged that defendant Frank Scozzafave "guaranteed the payment of the rent and all other contractual obligations of Showtime due under the lease." Following a bench trial, the trial court entered judgment for plaintiff. The court's order noted that default judgment "had previously been entered against the corporate defendants"; that "Michael Scozzafave has been discharged of any debt in this matter in bankruptcy"; and, thus, that "this order and judgment concern only the plaintiff's claims against defendant Frank Scozzafave." The court entered judgments against defendant for $256,753.00 in damages and $35,630.44 in interest. From these judgments, defendant appeals.

**[1]** Defendant argues first that the trial court erred by concluding that he was a guarantor on the lease. "In reviewing a judgment resulting from a bench trial, the question before this Court is whether competent evidence exists to support the trial court's findings of fact and whether those findings support the trial court's conclusions of law." *Beneficial Mortgage Co. v. Peterson*, 163 N.C. App. 73, 75, 592 S.E.2d 724, 726 (2004). In the instant case, the trial court's judgment was based in pertinent part upon its finding "that defendant Frank Scozzafave guaranteed Showtime's obligations under the lease as shown by the terms of and his signature on the lease as Guarantor[.]" We conclude that this finding was supported by competent evidence, and that it supports the conclusion that defendant was a personal guarantor of the lessee's obligations under the lease.

A personal guaranty is "a contract, obligation or liability . . . whereby the promisor, or guarantor, undertakes to answer for the payment of some debt, or the performance of some duty, in case of the failure of another person who is himself . . . liable to such payment or performance." *Trust Co. v. Clifton*, 203 N.C. 483, 485, 166 S.E. 334, 335 (1932). The guarantor "makes his own separate contract, . . . and is not bound to do what his principal has contracted to do, except in so far as he has bound himself by his separate contract[.]" *Hutchins v. Planters National Bank of Richmond*, 130 N.C. 285, 286, 41 S.E. 487, 487 (1902). However, both contracts (between creditor and primary obligor and between creditor and guaranty) may be contained in the same instrument. 38 Am. Jur. 2d *Guaranty* § 4 (1999).

Thus, "to hold a guarantor liable under a guaranty agreement, plaintiff must first establish the existence of the agreement." *Carolina Mills Lumber Co. v. Huffman*, 96 N.C. App. 616, 618, 386 S.E.2d 437, 438 (1989). In this regard, "contracts of guaranty are subject to the more general law of contract[.]" *O'Grady v. Bank*, 296 N.C. 212, 220, 250 S.E.2d 587, 593 (1978). In construing a contract, the court must look to the intent of the parties. *See Holshouser v. Shaner Hotel Grp. Props. One*, 134 N.C. App. 391, 518 S.E.2d 17 (1999). "It is a well-settled principle of legal construction that '[i]t must be presumed the parties intended what the language used clearly expresses, and the contract must be construed to mean what on its face it purports to mean.' " *Hagler v. Hagler*, 319 N.C. 287, 294, 354 S.E.2d 228, 234 (1987) (quoting *Indemnity Co. v. Hood*, 226 N.C. 706, 710, 40 S.E.2d 198, 201 (1946)). In addition, a contract should "be understood and interpreted in the light of the relationship of the parties, and the purpose they sought to accomplish." *Bank v. Corbett*, 271 N.C. 444, 447, 156 S.E.2d 835, 837 (1967).

It is true, as defendant states, that in our determination of whether a guaranty contract exists the labels given to contract terms are not necessarily *determinative* of the issue. However, this only means that "[i]t is appropriate to regard the substance, not the form, of a transaction as controlling, and we are not bound by the labels which have been appended to the episode by the parties." *Trust Co. v. Creasy*, 301 N.C. 44, 53, 269 S.E.2d 117, 123 (1980). But, this principle in no way suggests that the labels *chosen by the parties to a contract* are without weight in determining their intent. Moreover, in construing the terms employed in the lease, we are also guided by the Restatement (Third) of Suretyship and Guaranty § 15 (1996), which states in relevant part:

§ 15. Interpretation of the Secondary Obligation—Use of Particular Terms: Unless indicated to the contrary by applicable law, the language employed by the parties, agreement of the parties, or the context:

(a)  if the parties to a contract identify one party as a "guarantor" or the contract as a "guaranty," the party so identified is a secondary obligor and the secondary obligation is, upon default of the principal obligor on the underlying obligation, to satisfy the obligee's claim with respect to the underlying obligation[.]

In the instant case, the first sentence of the lease identifies defendant as a "guarantor," and defendant's signature appears at the

end, above the word guarantor. The lease was executed by defendant Showtime Enterprises, Inc. as lessee, and by defendant individually as a guarantor. The lease would have been binding on Showtime even without the signatures of the individual defendants as guarantors. Thus, defendant's signature serves no other function except to acknowledge his agreement to guarantee the lease. The preamble of the lease further demonstrates that Showtime was the lessee, and that defendant was a guarantor. The only reasonable interpretation of defendant's signature is that he was a guarantor on the lease. We conclude that the contract establishes the parties' intention to create a separate guaranty contract contingent upon the default of the primary obligor (Showtime), and that the trial court did not err by concluding that defendant was a guarantor on the lease. This assignment of error is overruled.

---

[2] Defendant Frank Scozzafave's second assignment of error asserts that the trial court erred in not finding that plaintiff failed to mitigate its damages. "Typically, in a leasing context, the duty to mitigate means that a landlord must use reasonable efforts to relet the premises to a new tenant." *Strader v. Sunstates Corp.*, 129 N.C. App. 562, 575, 500 S.E.2d 752, 759 (1998) (citing *Isbey v. Crews*, 55 N.C. App. 47, 51, 284 S.E.2d 534, 537 (1981)). Further, "the burden is on the breaching party to prove that the nonbreaching party failed to exercise reasonable diligence to minimize the loss." *Isbey*, 55 N.C. App. at 51, 284 S.E.2d at 538. In the instant case, plaintiff presented evidence that defendants left the property in such poor condition that it would have cost several hundred thousand dollars just to restore it to a condition in which it could be rented. Plaintiffs also testified that it was not feasible for them to attempt these extensive repairs in the short time remaining on the lease. This evidence supports the trial court's finding that plaintiff was unable to mitigate its damages and its conclusion that defendant was not entitled to a reduction in the amount of damages awarded to plaintiff. Defendant's second assignment of error is overruled.

We hold that the trial court did not err. Accordingly, the trial court's judgment in favor of plaintiff is

Affirmed.

Judges HUNTER and STEELMAN concur.