WEBB v. MCJAS, INC.

[228 N.C. App. 129 (2013)]

———————

THOMAS F. WEBB, TRUSTEE for the Thomas Fredrick Webb, dds pa Pension and Profit Sharing Plan and Trust, Plaintiff

v.

MCJAS, INC., d/b/a McAlister's Deli; DOUGLAS AMAXOPOLUS; and GINA AMAXOPOLUS, Defendants

No. COA12-906

Filed 18 June 2013

**Judgments—default judgment—proper consideration of extent of damages**

The trial court did not abuse its discretion by entering default judgment against defendant Douglas Amaxopulos in the amount of $992.88 for the unpaid rent under the terms of the parties' original lease and guaranty agreement and $506.78 for reasonable attorney fees. The trial court properly exercised its authority to consider the extent of the damages based on the allegations in plaintiff's complaint and evidence in support thereof.

Appeal by plaintiff from orders entered 21 January 2010 and 4 August 2010 by Judge Clifton W. Everett, Jr., and 27 January 2012 by Judge Marvin K. Blount, III, in Pitt County Superior Court. Heard in the Court of Appeals 12 December 2012.

*Poyner Spruill LLP, by Thomas R. West and Andrew H. Erteschik, for plaintiff-appellant.*

*The Bettis Law Firm, PLLC, by Lee W. Bettis, Jr., for defendant-appellee.*

BRYANT, Judge.

**WEBB v. MCJAS, INC.**

[228 N.C. App. 129 (2013)]

Where the trial court was within its authority to consider limited damages owed by defendant Douglas Amaxopulos to plaintiff Thomas Frederick Webb, DDS, P.A., Pension and Profit Sharing Plan and Trust arising under the original lease and guaranty agreements as set forth in plaintiff's complaint and attachments, we affirm the trial court's default judgment against Douglas Amaxopulos.

On 12 July 2002, Alexander Amaxopulos as President of McJas, Inc. (d/b/a McAlister's Deli) entered into a Lease agreement with Thomas F. Webb, DDS, as trustee for the Thomas Frederick Webb, DDS, P.A., Pension and Profit Sharing Plan and Trust, with the pension and profit sharing plan and trust as landlord and McJas, Inc. as tenant. Per the lease agreement, "Alex Amaxopulos and wife, Gina Amaxopulos and Douglas Amaxopulos, unmarried, shall execute a Guaranty of Lease . . . ." Douglas Amaxopulos was the father of Alex and agreed to serve as guaranty on the lease signed by Alex on behalf of McJas, Inc. Alex, Gina, and Douglas signed a Guaranty of Lease on 12 July 2002 "for a term of one five year[.]" The Guaranty of Lease stated "[t]he provisions of the lease may not be changed, modified, amended, or waived by agreement between Landlord and Tenant at any time without the Guarantor's written consent . . . ." Furthermore, the "Guaranty may not be changed, modified, discharged or terminated orally or in any manner other than by an agreement in writing signed by Guarantor and Landlord."

Attached to the Lease and Guaranty of Lease is a handwritten note that appears to be signed by Alex Amaxopulos, dated 18 July 2007: "June rent to be paid by July 26, 2007. July rent to be by August 25, 2007. August rent and September rent paid by September 25th, 2007[.] The current lease will be renewed for 5 more years according to all terms of current lease."

On 29 July 2008, plaintiff Thomas F. Webb, DDS, as trustee for the Thomas Frederick Webb, DDS, P.A., Pension and Profit Sharing Plan and Trust filed a complaint in Pitt County Superior Court naming as defendants McJas, Inc., Douglas Amaxopulos, and Gina Amaxopulos.[1] The complaint alleged that McJas, Inc. defaulted on a lease agreement with plaintiff and that plaintiff was entitled to recover the unpaid portion of the rent as well as attorney fees from defendants Douglas Amaxopulos

---

1. There is no indication in the record on appeal as to the status of Alex Amaxopulos and he is not a party to this action. While Gina Amaxopulos was a party at the trial court level, the action against her was dismissed without prejudice and she is not a party to this appeal.

and Gina Amaxopulos, as provided in the Guaranty of Lease. Attached to the complaint was the above referenced Lease, Guaranty of Lease, and handwritten note. The complaint sought judgment in the amount of $87,309.81, reasonable attorney fees, and costs.

On 3 September 2008, Gina Amaxopulos filed an answer denying liability and asserting as affirmative defenses *inter alia* that plaintiff failed to properly renew the original lease and failed to obtain her signature as guarantor of the lease. Neither McJas, Inc. nor Douglas Amaxopulos answered the complaint.

On 5 May 2009, plaintiff filed motions for entry of default as to defendants Douglas Amaxopulos and McJas, Inc. That same day, the Pitt County Clerk of Superior Court filed entry of default as to both defendants.

On 22 May 2009, with the leave of the trial court, plaintiff filed an amended complaint. Plaintiff again alleged that McJas, Inc. defaulted on its lease agreement with plaintiff and that plaintiff was entitled to recover the unpaid rents plus attorney fees less any rents paid by the new tenant which began on 1 March 2009. Plaintiff alleged that Douglas Amaxopulos and Gina Amaxopulos were liable for the unpaid rent as they had executed a Guaranty of Lease for all amounts due plaintiff from the corporation. Plaintiff alleged unpaid rent in the amount of $139,259.86. Again, Gina answered the amended complaint. In her answer, she asserted that she was unaware of any discussion "between the Landlord and Tenant regarding the original Lease or possibilities of renewing the Lease." Gina further provided that "[she] and Alexander Amaxopulos were separated in 2004 and [she] ha[d] not had any association or knowledge of day to day business of McJas . . . since that time." Again, McJas, Inc. and Douglas failed to file an answer.

On 21 July 2009, plaintiff again filed motions for entry of default along with supporting affidavits against McJas, Inc. and Douglas. The Clerk of Court filed entry of default and default judgments against both McJas, Inc. and Douglas Amaxopulos. In each default judgment, the Clerk of Superior Court ordered that plaintiff recover from McJas, Inc. and Douglas Amaxopulos $139,259.86 plus reasonable attorneys' fees in the amount of $20,888.98.

On 2 November 2009, Douglas filed a motion to set aside entry of default and default judgment. The matter was heard during the civil session of Pitt County Superior Court commencing 14 December 2009, the Honorable Clifton W. Everett, Jr., Judge presiding. Upon Douglas'

oral motion, the trial court heard the matter "as a motion to vacate an improperly entered default judgment and a motion to set aside entry of default . . . ." Douglas noted for the trial court that there were three defendants named in the complaint, that one defendant had answered the complaint, and that default judgment had been entered as to the remaining two defendants; however, the complaint did not assert that defendants were jointly and severally liable and no determination of liability had been made as to the defendant who responded to the complaint. Douglas went on to assert that in violation of the Guaranty of Lease agreement, he had received no written notice that the lease agreement was to be renewed. When he received service of process in the action, he contacted his then daughter-in-law defendant Gina Amaxopulos who informed him that "they had talked to an attorney and that the matter was being handled."

On 21 January 2010, the trial court filed an order granting the motion and vacating the default judgment as to Douglas Amaxopulos as improperly entered but denying the motion to set aside entry of default due to Douglas' failure to show good cause for failure to file a responsive pleading to plaintiff's complaint.

On 1 June 2010, plaintiff filed notice of voluntary dismissal without prejudice as to Gina Amaxopulos. Plaintiff also filed a motion for default judgment requesting that judgment be entered against Douglas Amaxopulos for the amounts alleged in the amended complaint. On 14 June 2010, the matter was again brought before Judge Everett who ordered that a subsequent hearing be conducted to determine the amount of damages to be awarded plaintiff pursuant to his motion.

The hearing to determine the amount of damages to be awarded plaintiff occurred during the 21 March 2011 civil session of Pitt County Superior Court, the Honorable Marvin K. Blount, III, Judge presiding. On 27 January 2012, the trial court entered default judgment against Douglas Amaxopulos in the amount of $992.88 for the unpaid rent under the terms of the original lease and guaranty agreement and $506.78 for reasonable attorneys' fees. Plaintiff appeals.

---

On appeal, plaintiff contends the trial court's entry of default judgment was in error when the trial court allowed defendant to present a defense following entry of default and concluded that defendant was not liable.

### *Standard of Review*

"As a general rule, this Court reviews an entry of default judgment for abuse of discretion." *MRD Motorsports, Inc. v. Trail Motorsports, LLC,* 204 N.C. App. 572, 575, 694 S.E.2d 517, 519 (2010) (citation omitted).

### *Analysis*

Plaintiff first argues that once defendants' liability had been conclusively established by entry of default and the 21 January 2010 order by Judge Everett denying defendant Douglas Amaxopulos' motion to set aside entry of default, Judge Blount erred by allowing defendant Douglas Amaxopulos to present a defense on the merits during the damages hearing and concluding in his 27 January 2012 order that defendant Douglas Amaxopulos was not liable. We disagree with plaintiff's characterization of the trial court's action and the assertion that the trial court's decision was contrary to law.

Pursuant to North Carolina General Statutes, section 1A-1, Rule 55, entitled "Default," the clerk of court shall enter default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead . . . and that fact is made to appear by affidavit, motion of attorney for the plaintiff, or otherwise . . . ." N.C. Gen. Stat. § 1A-1, Rule 55(a) (2011). "Once the default is established defendant has no further standing to contest the factual allegations of plaintiff's claim for relief." *Bell v. Martin,* 299 N.C. 715, 721, 264 S.E.2d 101, 105 (1980) (citation omitted). "A default judgment admits only the allegations contained within the complaint, and a defendant may still show that the complaint is insufficient to warrant plaintiff's recovery." *Hunter v. Spaulding,* 97 N.C. App. 372, 377, 388 S.E.2d 630, 634 (1990) (citations omitted); *see also, Decker v. Homes, Inc./Constr. Mgmt. & Fin. Grp.,* 187 N.C. App. 658, 664, 654 S.E.2d 495, 500 (2007) ("At a damages hearing following entry of default, evidence showing how the injury occurred is competent, not to exculpate defendants from liability, but to allow the [factfinder] to make a rational decision as to the amount of damages to be awarded." (citation omitted)). "[W]hen one party fails to file an answer and the trial court enters a judgment determining the issue of liability but ordering a trial on the issue of damages, the judgment is only an entry of default rather than a default judgment." *Decker,* 187 N.C. App. at 661, 654 S.E.2d at 498 (citation omitted).

Rule 55(b) governs judgment by default. *See* N.C.G.S. § 1A-1, Rule 55(b). With the exclusion of those cases in which the clerk of court is authorized to enter judgment by default (e.g. where "the plaintiff's claim

against a defendant is for a sum certain or for a sum which can by com-
putation be made certain," N.C.G.S. § 1A-1, Rule 55(b)(1)) "the party
entitled to a judgment by default shall apply to the judge therefor[,]"
N.C.G.S. § 1A-1, Rule 55(b)(2).

> If, in order to enable the judge to enter judgment or to
> carry it into effect, it is necessary to take an account or to
> determine the amount of damages . . ., the judge may con-
> duct such hearings or order such references as the judge
> deems necessary and proper . . . .

N.C.G.S. § 1A-1, Rule 55(b)(2).

In his 21 January 2010 order, Judge Everett "conclude[d] as a mat-
ter of law that [Douglas Amaxopulos] ha[d] failed to show good cause
. . . for his failure to file a responsive pleading to Plaintiff's Complaint
and Amended Complaint." And, as a result ordered "[t]hat Douglas'
Motion to Set Aside Entry of Default [was] hereby denied." However, on
4 August 2010, Judge Everett ordered that a bench hearing take place "to
determine the amount of damages to be awarded to Plaintiff pursuant to
his Motion for Default Judgment[.]"

Following the damages hearing, Judge Blount in his 27 January 2012
order entering default judgment against Douglas made the following
findings of fact:

> 5. On or about July 12, 2002, Douglas and Gina executed
> a Guaranty of Lease (the "Guaranty"), guaranteeing pay-
> ment by Douglas and Gina to the Plaintiff of all amounts
> due under the original term of the lease to Plaintiff from
> the Corporation.
>
> . . .
>
> 6. On or about July 12, 2002, Plaintiff entered into a Lease
> with the Corporation.
>
> . . .
>
> 11. The Lease provided the Corporation with the option to
> renew the provision within the Lease for up to two addi-
> tional five-year periods . . . .
>
> 12. After the renewal period in the original lease expired
> the Corporation on or about July 18, 2007 entered into a
> lease for an additional five-year term. Neither Douglas nor
> Gina entered into or guaranteed the new five-year term
> lease agreement.

13. The Corporation failed to make payment for rents and other expenses described in the Lease and vacated the premises at some unknown date in October 2007, constituting an event of default pursuant to the Lease.

14. Subsequent to the Corporation's default. Plaintiff relet the real Property described in the Lease, and Plaintiff began receiving rental payments from such new tenant on March 1, 2009.

Based on its findings of fact, the trial court concluded that Douglas had entered into an agreement to guarantee rental payments and other expenses due from McJas, Inc., under the initial term of the lease and that McJas, Inc. had defaulted on its lease agreement. The court further concluded that the guarantee agreement Douglas entered into "did not automatically renew nor did [defendant] renew his guarantee beyond the original term of the lease." Under the original term of the lease, plaintiff was due damages in the amount of $3,378.53 which Douglas guaranteed. But, because plaintiff was paid $2,385.65 through McJas, Inc.'s bankruptcy case, the remaining amount due plaintiff from Douglas was $992.88. Judge Blount thereupon ordered that default judgment be entered against Douglas Amaxopulos in the amount of $992.88 and that Douglas pay plaintiff reasonable attorney fees in the amount of $506.78.

Plaintiff contends that the trial court allowed Douglas to present a defense challenging his liability for McJas, Inc.'s unpaid rent beyond the original term of the lease; however, we note that plaintiff's complaint and amended complaint include as an attachment not only the lease agreement between plaintiff and McJas, Inc., and the Guaranty of Lease signed by Douglas, but also a handwritten notice of renewal signed by Alex Amaxopulos, not Douglas Amaxopulos. Therefore, plaintiff's complaint, on its face, is insufficient to support the extent of the recovery of damages as requested by plaintiffs. *See, e.g., Hunter*, 97 N.C. App. 372, 388 S.E.2d 630. We further note that during the hearing to assess damages owed by Douglas, plaintiff acknowledged that "[t]he information that I have, his client Mr. Amaxopulos, Douglas Amaxopulos, I mean, he was not a party to the lease extension discussions."

The trial court's findings and conclusion as to the extent of damages for which Douglas was liable to plaintiff as set out in Judge Blount's 21 January 2012 order was in compliance with the orders entered 21 January 2010 and 4 August 2010 by Judge Everett. And, as the trial court was within its authority to determine the amount of damages, we find no error in the trial court's consideration of the aforementioned attachments to plaintiff's complaint in order to determine the amount of

the damages to be awarded plaintiff by default judgment. *See* N.C.G.S. § 1A-1, Rule 55(b)(2).

Plaintiff also argues that if the trial court was permitted to consider issues of liability notwithstanding the entry of default against Douglas, the trial court's decision on liability was contrary to law and unsupported by the evidence. We disagree.

> A personal guaranty is a contract, obligation or liability ... whereby the promisor, or guarantor, undertakes to answer for the payment of some debt, or the performance of some duty, in case of the failure of another person who is himself ... liable to such payment or performance. The guarantor makes his own separate contract, ... and is not bound to do what his principal has contracted to do, except in so far as he has bound himself by his separate contract. . . .

> Thus, to hold a guarantor liable under a guaranty agreement, plaintiff must first establish the existence of the agreement. . . . It is a well-settled principle of legal construction that it must be presumed the parties intended what the language used clearly expresses, and the contract must be construed to mean what on its face it purports to mean.

*Tripps Rest. v. Showtime Enterprises*, 164 N.C. App. 389, 391-92, 595 S.E.2d 765, 767-68 (2004) (citations and quotations omitted).

Plaintiff cites *Devereux Properties, Inc. v. BBM&W, Inc.*, 114 N.C. App. 621, 624, 442 S.E.2d 555, 556 (1994), in support of its proposition that "notwithstanding a material alteration in the contract, a guarantor remains liable where there is implied consent." We note that in *Devereux Properties, Inc.*, "[t]he guaranty agreement . . . specifically state[d] that [the] defendants 'agree to perform each and every obligation of Tenant under this Lease Contract *or any extension or renewal thereof.*' " *Id.* at 623, 442 S.E.2d at 556 (emphasis added). In the instant case, the Guaranty of Lease Douglas entered into contains no such language. In fact, the Guaranty of Lease stated clearly that it was effective for one five year term and could not be changed other than by written agreement between the guarantor (Douglas Amaxopulos) and landlord (plaintiff). *Devereux Properties, Inc.* is inapposite.

As we noted earlier, the lease agreement signed by Alex Amaxopulos as president of McJas, Inc., and the Guaranty of Lease signed by Douglas

on 12 July 2002 was for a five year term. The handwritten note renewing the lease was not signed by Douglas Amaxopulos, and there is no indication in the allegations of the complaint, the documents submitted as exhibits to plaintiff's complaint, or in the evidence presented during the hearing to determine the extent of damages Douglas Amaxopulos owed to plaintiff, that Douglas renewed his Guaranty of Lease.

Therefore, even if the trial court were permitted to consider liability, which we find it did not, a discussion on liability would be supported by the evidence in this case. Upon this record, we find that the trial court did not err in concluding that the damages owed to plaintiff by Douglas Amaxopulos were limited to those which arose during the original lease term, for which Douglas Amaxopulos did enter into a Guaranty of Lease agreement. *See Tripps Rest.*, 164 N.C. App. at 391-92, 595 S.E.2d at 767-68. Accordingly, plaintiff's argument is overruled.

In conclusion, we hold the trial court properly exercised its authority to consider the extent of the damages based on the allegations in plaintiff's complaint and evidence in support thereof. *See Hunter*, 97 N.C. App. at 377, 388 S.E.2d 634 (citing *Weft, Inc. v. G. C. Investment Assoc.*, 630 F.Supp. 1138, 1141 (E.D.N.C.1986), *aff'd*, 822 F.2d 56 (4th Cir.1987), for the proposition that "default not treated as absolute confession by defendant of plaintiff's right to recover and court must consider whether plaintiff's allegations are sufficient to state claim for relief").

Affirmed.

Judges CALABRIA and GEER concur.